Note.—See under (1) 28 Cyc. pp. 1758, 1774. (2) 28 Cyc. p. 1542 (Anno); anno. 59 L. R. A. 604; 12 L. R. A. (N. S.) 433; 31 L. R. A. (N. S.) 556; 19 R. C. L. p. 982. (3) 28 Cyc. p. 1663 (Anno).

---

**McKINLEY et al. v. A. L. SCOTT LBR. CO.**

No. 12659—Opinion Filed Jan. 19, 1926.

Rehearing Denied July 13, 1926.

1. **Mechanics' Liens — Guaranty — Vendor and Purchaser—Materialman as Guarantor to Vendee—Liability of Vendee for Price of Material.**

Where a contract for the conveyance of real property under process of improvement is entered into in writing, by the terms of which the vendor obligates himself to convey the same free of all liens and incumbrances except two specifically mentioned mortgages and said contract is thereafter unconditionally guaranteed in writing by one of the materialmen furnishing material for such improvements upon the consideration that the vendee will permit the vendor to withdraw a purchase money note from escrow, which is done, such guarantor is not entitled to personal judgment against the vendee for amount of material furnish-

ed and used in such improvements which is in excess of the purchase price agreed to be paid for the property.

### 2. Mechanics' Liens—Materialmen's Lien— Release—Delivery on Condition not Communicated.

Where a loan is required to complete certain improvements on real property, and the loan is made on condition 'that releases of all liens or claims for material be executed and delivered before the proceeds of the loan are 'paid out, a lien claimant executing such release and delivering it to the loan company through the agency of the borrower cannot, after the loan is paid out, have said release canceled on the ground that it was delivered to the borrower on condition that claimant's lien should be discharged from the proceeds of the loan, such condition not being communicated to the loan company or its agent, nor agreed to by the loan company or its agent.

### 3. Same—Duress as Ground for Cancellation of Release.

Nor will such release be canceled on the ground of duress, where its original delivery to the loan company's agent was voluntary, but it was afterward obtained from him through fraudulent representations and he recovered possession thereof through duress.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pontotoc County; John L. Coffman, Assigned Judge.

Action by A. L. Scott Lumber Company against John P. McKinley and Farm & Home Savings & Loan Association and others, to recover judgment for building material furnished, and to foreclose a lien therefor. Judgment for plaintiff, and defendants John P. McKinley and Farm & Home Savings & Loan Association bring error. Reversed.

This action was commenced September 18, 1917, in the district court of Pontotoc county against H. C. Wilson, John P. McKinley, and Farm & Home Savings & Loan Association and others, and was tried upon a second amended petition, the substance of which is as follows: That on or about June, 1917, the plaintiff entered into an oral contract with H. C. Wilson, by the terms of which plaintiff was to furnish certain lumber and building material to said H. C. Wilson for the construction of a certain residence on certain described lots in the city of Ada, for which the said H. C. Wilson contracted and agreed to pay the market price, and that in addition to said lumber and material, and by virtue of said oral contract plaintiff also advanced to said Wilson certain sums of money for the purpose of paying for labor

in the construction of said house, which said Wilson promised and agreed to repay, and that the total indebtedness due from Wilson to plaintiff by reason of said oral contract and agreement is the sum of $1,091.03, with interest thereon at the rate of 6 per cent. per annum from the _____ day of September, 1917. It is further alleged that Wilson negotiated a loan on said premises with the Farm & Home Savings & Loan Association for the purpose of securing money with which to pay for the lumber, building materials, and labor used in the construction of said building, and that he secured the sum of $1,800 for this purpose; that before said loan would be made or the money paid out thereunder, John P. McKinley, the agent of the Farm & Home Savings & Loan Association, advised plaintiff that it would be necessary for it to execute a release of its materialman's lien against said premises, and that plaintiff did so and delivered same to defendant, H. C. Wilson, with the express understanding that the same was not to be delivered to defendant Farm & Home Savings & Loan Association or its agent unless the proceeds of said loan would be applied on plaintiff's account. It is further alleged that said release so executed by plaintiff was delivered by H. C. Wilson to John P. McKinley, agent of the Farm & Home Savings & Loan Association, under duress and by means of physical violence and assault, and that in truth and in fact there was no voluntary delivery of the said release to the said defendants, Farm & Home Savings & Loan Association, or its agent, John P. McKinley. It is further alleged that John P. McKinley and the loan company were at all times aware of the exact nature of the contract between plaintiff and Wilson, and that they knew of the custom existing in the city of Ada for materialmen and laborers to give releases of liens, for the purpose of permitting owners of property to obtain loans with which to pay for the construction of improvements; and that said defendants McKinley and the loan company knew that plaintiff's release was executed for this purpose and with this understanding, and that by reason of such custom and knowledge thereof said McKinley and the loan company are estopped from claiming any benefit under said release. The prayer of this second amended petition was for judgment against H. C. Wilson for the sum of $1,091.03, with interest thereon at the rate of 6 per cent. per annum from September 7, 1917, and $150 attorney's fees, for the cancellation of its release of lien, and that upon said release being canceled, it have judgment foreclosing its lien upon the premises therein described, and that the

same be ordered sold according to law for the satisfaction of plaintiff's judgment.

The answer of the Farm & Home Savings & Loan Association was a general denial, and an admission that it loaned to H. C. Wilson $1,800, and that it required of him a release of all liens and claims against the property so that the abstract would show a clear title before it paid out the money.

The answer of the defendant John P. McKinley consisted of a general denial and an affirmative defense, in substance, that during the course of construction of said building, McKinley purchased the property from Wilson for the sum of $2,421, which was to be paid as follows: $112 in cash; $300 evidenced by a note due 12 months after date; and the assumption by McKinley of the $1,800 loan on the property, and the assumption of a second mortgage for $209, being the balance due on the purchase price of the lot; that the contract of purchase between Wilson and McKinley was in writing, and that all papers relating thereto, including the $300 note, were placed in the Oklahoma State Bank in escrow to remain until the contract was completed and carried out according to its terms; that thereafter and on July 27, 1917, the said Wilson was in need of money and asked this defendant to permit his withdrawal of the $300 note held in escrow in the bank, in order that he might cash the same; and that as an inducement to this defendant to turn over said $300 note to Wilson, the plaintiff, A. L. Scott Lumber Company, by its agent, J. L. Skillin, executed and delivered to this defendant its written guaranty that Wilson would carry out his contract with this defendant according to its terms and conditions, among which terms and conditions was the provision that the premises should be conveyed to this defendant by warranty deed, free from all liens and incumbrances save and except the $1,800 indebtedness to the Farm & Home Savings & Loan Association, and the second mortgage for $209; that said written guaranty was executed and delivered by the plaintiff to this defendant, who thereupon permitted said $300 note to be withdrawn from escrow and to be used by defendant Wilson as his property; that thereafter this defendant paid out the said sum of $1,800, the proceeds of the loan procured by Wilson, upon the joint orders and with the joint consent of Wilson and the plaintiff, and that said $1,800 was insufficient to pay all of the claims and demands outstanding against said property, and that nothing remained of said $1,800 after the performance of Wilson's contract, and the contract of guaranty executed by the plaintiff, to apply on plaintiff's account, but this defendant, in or-

der to have clear title to the property, was compelled to advance nearly $100 in excess of the purchase price agreed to be paid in order to have clear title thereto.

Plaintiff replied to these separate answers by general denial. Upon trial had March 5, 1921, there was a verdict in favor of plaintiff against H. C. Wilson and John P. McKinley for the sum of $1,091.03, cancellation of the release as to the Farm & Home Savings & Loan Association, and for foreclosure of the materialman's lien, and judgment was entered upon this verdict. After unsuccessful motion for new trial, the defendants John P. McKinley and Farm & Home Savings & Loan Association have brought the case here by petition in error with case-made attached for review. As to H. C. Wilson, the judgment of the lower court has become final.

Robert Wimbish and W. C. Duncan, for plaintiffs in error.

W. F. Schulte, for defendant in error.

Opinion by LOGSDON, C. There are 11 assignments of error, but in the view taken of the case here it will only be necessary to consider the 8th and 10th, which read:

"(8) The trial court erred in rendering judgment in favor of the defendant in error, A. L. Scott Lumber Company, and against these plaintiffs in error, to which the plaintiffs in error duly excepted.

"(10) That the judgment of the trial court is contrary to law and is not supported by the evidence."

There is practically no conflict in the evidence upon material questions involved. Upon the trial the testimony developed a state of facts as follows: H. C. Wilson was the owner of lot 6, block 3, Belmont addition to the city of Ada. He contracted with the plaintiff, A. L. Scott Lumber Company, for lumber and material with which to erect on the above described lot a six-room dwelling house. During the progress of the work, and before the building was completed, he made a contract to sell the property to the defendant J. P. McKinley for a consideration of $2,421. McKinley and his partner were agents at Ada for the Farm & Home Savings & Loan Association. In the contract between Wilson and McKinley it was agreed that Wilson should take a loan with this association for the sum of $1,800, to be secured by mortgage on these premises, and that McKinley should assume the payment of this mortgage as a part of his purchase price for the property. It was further agreed that McKinley should likewise assume a second mortgage for the balance of the unpaid purchase price of the lot, and should pay to Wilson the sum of

$112 in cash, and execute a note for the sum of $300 with interest due 12 months after date. On Wilson's part he agreed and bound himself to complete the building in all respects as called for by the plans and specifications, and to convey the property to McKinley by warranty deed free from all incumbrances except the two mortgages. above mentioned. This contract between Wilson and McKinley was reduced to writing, dated July 9, 1917, and with the deed and McKinley's note, was placed in escrow in a bank to await the completion of the building and the furnishing and approval of the abstract. During the pendency of the loan application, the loan company required a release of all liens, or claims which could become liens, against the property before it would advance the $1,800 required. Wilson procured this release which was signed by practically all of the laborers and materialmen, including the plaintiff, A. L. Scott Lumber Company, and turned the same over to McKinley as the agent of the loan company. About the same time Wilson was in need of some money and applied to McKinley for permission to withdraw the $300 note from escrow in the bank, in order that he might negotiate the same and procure funds for his personal use. As a consideration for permitting the withdrawal and using of this note by Wilson, A. L. Scott Lumber Company executed and delivered to McKinley the following guaranty of the contract of H. C. Wilson with McKinley:

"That the firm of A. L. Scott Lumber Company will guarantee that H. C. Wilson will complete a certain building and other improvements located on lot 6 in block 3, Belmont addition, in accordance with a certain contract dated the 9th day of July, 1917, and by and between H. C. Wilson and John P. McKinley of Ada, Okla."

When the $1 800 loan was secured it was deposited in a bank at Ada to the personal credit of John P. McKinley, and was paid out by him upon the joint orders and with the joint consent of H. C. Wilson and A. L. Scott Lumber Company, in satisfaction of claims for material and labor used and incurred by Wilson in the construction of said improvements. Nothing was paid on the claim of A. L. Scott Lumber Company for the reason that the other material and labor bills amounted to $2,507, or nearly $100 more than the price which McKinley agreed to pay for the property.

It is further disclosed by the testimony that when the release of lien executed by the A. L. Scott Lumber Company was given by it to Wilson, he delivered the same to McKinley in violation of his agreement with A. L. Scott Lumber Company to deliver it only upon payment of its claim. Neither McKinley nor the loan company knew of this agreement between Wilson and the lumber company, and the. release was received and accepted by them without conditions. Afterward Wilson went to McKinley and requested the return of the release to him for the purpose of procuring the signature of another lien claimant, whom he represented had been overlooked. This representation by Wilson was false and was made merely for the purpose of recovering possession of the release. The testimony is in conflict as to what then occurred, Wilson and one other witness testifying that McKinley forced him to surrender the release by threats of bodily injury. This is denied by McKinley.

At the conclusion of all the testimony defendants requested the court to instruct the jury as follows:

"You are instructed that if the plaintiff in consideration that the defendant John P. McKinley released to the contractor, H. C. Wilson, the $300 note that was then in escrow, and delivered the same to said Wilson, and that for said consideration the plaintiff executed and delivered to the defendant John P. McKinley said guaranty that said building would be completed according to contract. then the defendant John P. McKinley would have the right to pay the proceeds of said loan on any and all claims for labor and material due on said building before paying anything to the plaintiff, and that the plaintiff would be entitled to recover of the defendant John P. McKinley only such amount as might be left after paying all valid claims for labor and material expended on said residence as above stated, and if he applied the full proceeds of said loan in the payment of such claims, then the defendant John P. McKinley would not be liable to the plaintiff in any amount, and you will return a verdict for him."

This requested instruction was refused by the trial court and exception reserved. The question of guaranty was not submitted to the jury by the trial court in any of its instructions, and the jury was, therefore not permitted to pass upon this question. This action of the trial court is considered to have been prejudicially erroneous. The contract of guaranty executed by A. L. Scott Lumber Company was an unconditional contract, guaranteeing the performance by Wilson of his contract with McKinley of July 9, 1917. The obligatory part of the Wilson contract of July 9, 1917. which plaintiff guaranteed, was the completion of the building in all respects as called for by the plans and specifications, and the conveyance of said premises to McKinley free of all liens and incumbrances except the mortgage of

$1,800 to the loan company and the second mortgage of $209 on the purchase price of the lot. Under the testimony preserved in the record it is clearly evident that after giving this guaranty, plaintiff had no right to claim or demand anything from McKinley until the terms and conditions of Wilson's contract with him had been fully performed. By Comp. Stat. 1921, section 5123, a guaranty is defined to be a promise to answer for the debt, default or miscarriage of another person, and by section 5126, a guaranty is required to be in writing, but need not express a consideration. By section 5133 a guaranty is to be deemed unconditional unless its terms import some condition, and by section 5128, an absolute guaranty is made binding upon the grantor from delivery without notice of acceptance. The guaranty in this case fulfilled all of these statutory requirements. It was an agreement on the part of the plaintiff to answer for the default or miscarriage of Wilson in the performance of his contract with McKinley, it was in writing, it was unconditional, and it was delivered to McKinley. who accepted it and released from escrow the $300 note, and permitted Wilson to exercise the right of ownership thereof. There is no evidence in the record impeaching or contradicting this guaranty contract, and the judgment of the trial court fixing a personal liability upon John P. McKinley in the sum of $1,091.03 is without support in the evidence and is contrary to law.

As to the issue raised between the plaintiff and the Farm & Home Savings & Loan Association, it is clearly apparent from the evidence that the release of lien executed by the plaintiff was delivered by Wilson to the agent of the company without notice or any condition attached to its execution and delivery. The duress relied on by plaintiff for the cancellation of the release bears no relation to the original delivery thereof. Even accepting the testimony of the plaintiff as conclusive, it does not show or tend to show that any duress or threats were used toward Wilson at the time the release was first delivered by him to McKinley. The fact that Wilson subsequently obtained possession of the release through fraud, and was compelled by McKinley under duress to redeliver the instrument, would not constitute the kind or character of duress or threats which would invalidate the original voluntary delivery of the release to McKinley so as to entitle plaintiff to its cancellation as against the loan company. The verdict of the jury and the judgment of the court based thereon, canceling and setting aside this release and declaring the lien of plaintiff to be prior and superior to the

mortgage of the loan company, are without support in the evidence and are contrary to law.

For the reasons herein stated, the judgment of the trial court is vacated, except as to H. C. Wilson, and this cause is reversed, with directions to grant the defendants, John P. McKinley and Farm & Home Savings & Loan Association a new trial, and for further proceedings not inconsistent with the views herein expressed.

By the Court: It is so ordered.